May it please the court and counsel, my colleague Mr. Hodges. My name is Angel Runnels and I represent the appellant Armando Cheshier. We are asking the court to reverse and remand on four interrelated issues. First, the refusal of Mr. Cheshier's plea. Second, the jury instructions. Third, the refused defense instruction. And finally, on sufficiency of evidence. And I think when these four issues are reviewed in their totality, it's clear that maybe alone the issue wouldn't be as obvious, but when comparing and contrasting them, I think there's certainly an issue with sufficiency or the cumulative errors because of how each were interrelated from the viewpoint of the citizen defendant, that those cumulative errors cause substantial prejudice because the case as a whole presented an image of unfairness which resulted in a deprivation of his constitutional rights. I'll discuss the Rule 11 error first. But the unifying thing just really quickly before you get into each individual error is the intentionality requirement. If we say that knowledge is good enough and that you didn't have to, you know, instruct on intentionality, find intentionality, et cetera, then the cumulative error and the other errors pretty much go away, correct? Well, I disagree because then we have a problem with the Rule 11 error. My understanding is that Rule 11-1G requires the court, the court must inform the defendant of the nature of the charge. And if that transcript has been reviewed by the court, it will be noted that the district court repeatedly advised Mr. Cheshire that the government must prove that he intentionally distributed fentanyl. I couldn't understand what remedy you're seeking in that regard. Are you saying that you want the convictions vacated so you can plead guilty? Well, I think it's, you can probably read between the lines that the plea agreement in this case was very advantageous to Mr. Cheshire. And he struggled with the advising and understanding the elements of the charge and the government and I in our, you know, relayed to Mr. Cheshire their belief that something like a transferred intent type of argument would work in consideration of, you know, cases like Shepard, which aren't on point but talk about, you know, as long as you know that you're distributing some controlled substance even if you don't understand the nature of it, you know, an argument something like that. And Mr. Cheshire then wanted to take advantage of something and that would be advantageous to him and attempted to plead guilty with the factual basis being that he may have intended to distribute the Xanax that the fentanyl was taken from him against his will. And with that... So, just so I can focus, what is the remedy you're seeking now? Well, I do believe that the convictions could be vacated and that that plea could have been, could be accepted. Again, it's hard for me because if he was wrongly advised at the plea, then I do believe that was an abuse of the court's discretion because he has the right to be correctly advised. Had we been told, had Mr. Cheshire, again, from the perspective of the citizen defendant, had he been told that all that would need to be proven was knowingly, then there could have been a resolution to that. I mean, it's not, it wouldn't be the first time that a factual basis could be resubmitted. And I think there was an opportunity for that here, but not when Mr. Cheshire was told that he had to have the intent to distribute the fentanyl. And even in the colloquy between the court and the counsel and the defendant and counsel for the government, the district court repeatedly stated, well, in the absence of any evidence that he, that he intended to transfer the fentanyl, then there's not a factual basis here. And the court asked for more evidence. What is the relevance, though, of the fact that he denied another element to the offense? You know, I mean, it's related, but the actus reus itself, which was distribution. I mean, he's clearly denied distributing anything at all. And so what's the relevance of that to the remedy you're seeking and to your argument? I guess I would disagree. I think what he is saying is, is he offered her, certainly, there's a fact, the words that he says as a citizen, you know, he says, I offered, and he gave, he offered over the opportunity to take the Xanax. But it's the part where she then stole way more than what he offered. Certainly, if he was asked, you know, did you intend to transfer the Alprazolam, he would have said yes. Counsel, are you familiar with the Wiley case that came up from this court in early December about the baby who takes from the stash that's there to be distributed? I'm not, but I could certainly present a... No, no, no. Just so you know, there we found that there was intent to distribute, and it was provided to the baby. Transfer is the word in the statute, right? You're facing the word transfer to? Well, I would like to review that and then submit a 28-J letter on that. Sure, sure. But in your case, is transfer in the statute, it's the same statute, right? Yes. Okay, yeah. Yes. The court relied on the transfer language there. But no, no, you don't need to address it this time. Use your time for something else. And I just wanted to add on my prior question, it says I didn't intentionally distribute fentanyl. I didn't distribute fentanyl, period. So he addressed both. So he's denying distribution, which is the actus reus. I mean, maybe you could say he misspoke, but I mean, that's in the record. But he is denying distribution of fentanyl. Again, with an assumption that the definition of distribution requires that you have a choice in voluntarily relinquishing custody or an ownership of something and providing it, that ownership to someone else for it to be theirs. And I think it's in a very thorough review. I can't find another case, although certainly the government argues that knowing is one of the options. There aren't any cases where someone just happens to be aware that someone else takes something against their will. Even in cases where the jury is advised knowing and intentionally, the word knowing ends up it's irrelevant because what's proven is intent. And I think that there is an issue where this is ambiguous because that rule, that 11-1G advisement to my client, the word knowingly wasn't mentioned. It was repeatedly said it needs to be intentional. And then we have the motion for judgment of acquittal and the jury instructions that say, oh, no, knowledge is okay. And then in particular point, the arguments of the government in closing, almost as if, you know, if someone just steals something from you, and think of the grabbing and mouth movement that would have occurred, that you need to fight someone. I think it's clear that the knowledge or the intent has to be before the transfer occurs. You have to be aware, knowledgeable, that the other person is going to take ownership. And it's hard to come up with an example, and it's kind of silly, you know, the purse example I gave, but I'm trying to illustrate this from, again, the defendant's mens rea, that they know that they're transferring ownership of the drug to the person who's then taking it. I guess, again, I think that it even invokes the rule of lenity because we are, in combining all of these issues, it's ambiguous and uncertain, again, to the citizen defendant. There's no question that the district court's advisement left Mr. Cheshier confused when he then heard the decision on the motion for judgment of acquittal, as well as the advisement to the court. As for the jury instructions, I think whether there's an objection or there's not an objection, at the end of the day, the court was on notice that this issue was about intentional distribution. It was clear when you combine the plea hearing and the arguments on the motion judgment of acquittal and the instructions that the court was on notice that this was an issue. So regardless, I believe that this is an abuse of discretion standard, and there aren't any other cases where knowingly is enough. I believe that the model instruction is relevant, that it is appropriate, and that it should have been used. Again, also, with all of these arguments, juxtapose these with the fact that this is a 20-year mandatory minimum sentence, and I think a significant punishment like that, considering the ambiguity here, case by case, defendant to defendant, hearing by hearing, there's an issue with the lack of it being clear-cut, and that should weigh heavily in my client's favor. I'll reserve that for now. Mr. Hodges. MR. HODGES. Good morning. May it please the Court, Counsel, my name is Mark Hodges. I work with the United States, and asking this Court to affirm Mr. Cheshire's convictions. Starting first with the plea issue, precedent from this Court shows that district courts have broad discretion in determining whether or not to accept a plea, and the district court in this case properly exercised that discretion. The Brown case makes clear that defendants don't have a right to plead guilty, and that in that case, the Court seemed to suggest or even more that the defendant had admitted to facts that they would have found sufficient for a plea, but that they left it to the discretion of the district court, who thought that the defendant was waffling on the wait to reject that plea. I would posit that the facts in our case today don't even rise to the level of the facts that were rejected in the Brown case. Mr. Cheshire. JUSTICE SCALIA. What about the fact that the judge, it is alleged, used the wrong legal standard? MR. HODGES. In the current case? JUSTICE SCALIA. Yes. MR. HODGES. As far as the... JUSTICE SCALIA. I don't think that was an issue in Brown. MR. HODGES. It wasn't, and I don't know that it was... JUSTICE SCALIA. What about that? What about that problem? MR. HODGES. I don't know that that was fully brought up in the brief as far as the advisement, but I don't think that the judge in this case did advise incorrectly. The judge said that there has to be intentional distribution, and I think most importantly for this case, as Judge Strauss pointed out, was that Mr. Cheshire denied any distribution at all. The quotes from him were that first he said he thought he was being forced to plead guilty by the government, and then next that he didn't intentionally distribute fentanyl, he didn't distribute fentanyl, period, and went on to then describe this scenario where the baggie was on a bed, and he suggested that she take Alprazolam, and then she took more than he had suggested. And so based on those facts, and that was the only facts presented at the plea hearing, the judge did not commit any kind of abuse of discretion by rejecting the plea. I mean, I think the quote from the district judge was, it doesn't look like he's going to plead guilty today. And he says, I'll plead guilty if you accept my factual basis statement. There wasn't a factual basis for the plea because he denied any kind of a transfer, and, of course, there's this argument about, well, it all flows through then from that to the instructions to the sufficiency. But it is key, and as the district judge said, there's a marked difference between diversion of facts that were presented at the change of plea through the factual basis and then through Mr. Cheshire's answers to the judge's questions and the evidence that was presented at trial. And I'll dovetail that into the sufficiency argument. Are you saying that putting a bag of drugs on a bed and referring the person to the bag is insufficient to show knowing distribution? The caveat is, is that he continuously denied the fentanyl. I think if, as the judge said in the district court, if he had said take pills, that would be a knowing distribution. But he continuously denied having any intention of the transfer of the fentanyl. Any intention, but the government doesn't have to prove intent, right? It has to prove knowing distribution. Yes, and I think the issue would be that... Did he know there was fentanyl in the bag on the bed? I believe he admitted that in the factual basis statement was that he had both fentanyl and Xanax in the bag. But again, as Judge Strauss said, he specifically said in his colloquy that he didn't transfer fentanyl. And so with that kind of a statement from the defendant, the judge doesn't have a way to proceed on a factual basis. But looking at the sufficiency of the evidence, and maybe I'll start with the... Well, counsel, there was no objection, right? And there also wasn't an objection. In this case, I know both of you said abuse of discretion, but I just looked. I'm pretty sure there was. So isn't it plain error review? We're under a plain error review, yes. I think the other side says that too, proceed. Yep. I'm just talking about the case law talking about abuse of discretion. Sorry. Yeah, we're under a plain review. And Judge Collettine, you raised a great question initially of what is the remedy here. There's no remedy sought. There's really no discussion of prejudice, if we're looking at plain error, through the briefs. And this is a case where Mr. Cheshire got convicted of the crime that he was trying to plead guilty to. It's a case where his guideline range was, I think, 124 months at the bottom. He asked, or objected, that he should have received acceptance points, which are the easiest... But he could have admitted at trial that he was guilty, I suppose. He could have. He didn't testify, did he? No, he didn't. But he disputed the sufficiency of the evidence. He still is. He is, yes, Your Honor. And so the judge did give him a downward variance, basically acknowledging that he had talked to the police and stayed at the scene and attempted to try and help the victim. And so he received a pretty significant variance, I believe of about 72 months or 22 percent, already for an acknowledgment of acceptance of responsibility. But I would posit that if the court was inclined to find that this was plain error committed by the district court, that the remedy would be to go back for a resentencing with him receiving the three acceptance points and the change in the guidelines because of that. Turning to the jury instructions, this is a case where the jury instructions follow the statute. The statute says, it's a crime for anyone to knowingly or intentionally distribute, dispense, or manufacture a controlled substance. When the Supreme Court has looked at the issue of sufficiency of a conviction under this crime, they have said that the first, it's two elements, and that the first one is a knowing or intentional distribution. And the second is that there is the distribution results in death. And this court has also repeatedly stated that as the standard. That's the phrase, those are the terms that the jury instructions in this case followed. Well, they just used one of them intentionally, right? I thought they just used one intentionally. Am I wrong? The jury instructions that were given in this case said that on or about September 29th, 2021, Cheshire knowingly or intentionally transferred second victim one. Proceed. Apparently there's a model, so-called model instruction that is problematic. There is a model. Have the U.S. attorneys written a letter to the committee on that? Well, my appellate chief is on the, I think on the pattern committee. And so we had a discussion in preparing for this that maybe there should be a little, a change to that pattern as I see. It's not a pattern, but go ahead. Yeah, or model, sorry. I think pattern is the term for the state jury instructions. Yeah. You know those are not adopted by the court of appeals. You understand those are formulated by a committee of district judges and they take input from the bar. Yes. And they're useful for district judges to make instructions, but district judges have discretion to come up with instructions that they think fit their cases as long as those instructions properly state the law and the burden of proof. And the instructions in this case did that. And so I haven't seen any reason that the fact that the instructions contain both the term knowingly or intentionally, the same language as the statute, that they would be improper. And so I believe that the court did not abuse discretion in providing those instructions. The jury instruction offered by the defense in the case was argumentative. It contained an improper description of the burden of proof. And so again, I don't believe the court abused its discretion in giving that instruction. Turning lastly to the sufficiency of the evidence, this is a case where there were multiple bases that a reasonable juror could conclude that Mr. Cheshire either intentionally or knowingly transferred this fentanyl to the victim. First and foremost is that the evidence showed that it was a hand-to-hand transfer. He admitted on a 911 call to the officers at the scene and to the detective that this was a hand-to-hand transfer. There's a reasonable inference that someone knowingly or intentionally is transferring an item when they do it hand-to-hand. Additionally, there's evidence in the case that a juror could look at and essentially reject Mr. Cheshire's explanation that he only intended to distribute alprazolam. This is his best version of events, but throughout the investigation, he waited to call 911 to get help for the victim. He told law enforcement that he did that to avoid punishment. He told the detective that he had swallowed pills, the remaining pills, and flushed the methamphetamine to avoid a charge on those counts. So I do believe there's a reason or that there would be a reasonable basis that a juror could look at that and reject it. I also think it's important to know that he had previously distributed these fentanyl pills to the victim, shown by text messages in his own admission from the day before. And then additionally, I also think it's important to note that the jury instructions in defining knowledge and intent both said that it can't be a mistake or an accident. And so the jurors were aware of that and rejected that argument during the  And I would ask that you reject that argument today and affirm the convictions. Thank you. Very well. Thank you for your argument. We'll hear 23 seconds of rebuttal. Thank you. What I will say is that I am aware it's plain error. My client would not have objected when he was told there was no factual basis for his plea. But I want to point out that the Rule 11 error to incorrectly advise him of his rights was absolutely an error that was plain, and it does affect the public's trust in the system. Advising is a big chunk of what the judge does. Thank you. Very well.